UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK (BROOKLYN)

------------------------------:

FJONA DAJLANI,                    :Case No.: 23-cv-3394

          Plaintiff,      :

   v.                             :Brooklyn, New York
                                  :May 31, 2024
BABY GENERATION, INC.,            :

          Defendant.      :

------------------------------:

TRANSCRIPT AND STATUS CONFERENCE HEARING

BEFORE THE HONORABLE JAMES R. CHO

UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For Plaintiff:        KAPLAN FOX & KILSHEIMER LLP
                      BY:  Joel B. Strauss, Esq.
                           Matthew George, Esq.
                      800 Third Avenue - 38th Floor
                      New York, New York 10022

For Defendant:        SMITH, GAMBRELL & RUSSELL, LLP
                      BY:  Jeremy Richardson, Esq.
                      1301 Avenue of the Americas
                      New York, New York 10019



Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

THE COURT: Good morning, everyone. It's Judge Cho. We're here for a hearing in Dajlani, et al., v. Baby Generation; Case Number: 23-cv-3394.

Can the parties state their appearances for the record, starting with plaintiff.

MR. STRAUSS: Joel Strauss of Kaplan Fox & Kilsheimer LLP for plaintiffs.

MR. GEORGE: And this is Matthew George from Kaplan Fox & Kilsheimer for plaintiffs.

MR. RICHARDSON: And good morning. For the defendant, it is Jeremy Richardson from Smith, Gambrell & Russell.

THE COURT: All right. Good morning, everyone.

I scheduled this call because I note in the parties' status letter, Docket Number 32, there's an issue as to production of communications between defendant and the Consumer Product Safety Commission. Let me ask defendants first.

Mr. Richardson, in your letter you noted that you would like to see plaintiff's opposition to your motion to dismiss first to see whether your position on production of those documents would change. It's my understanding that the plaintiff's opposition has now been served on you; is that

correct, Mr. Richardson?

MR. RICHARDSON: Your Honor, respectfully, that is not correct. The plaintiff's opposition has been served. It was served, I think, a week or a week and a half ago.

THE COURT: Okay. So you have received it, correct?

MR. RICHARDSON: Yes, Your Honor, we have.

THE COURT: All right. Have you had a chance to review it?

MR. RICHARDSON: Yes, Your Honor, we have.

THE COURT: All right. Now, having reviewed their opposition, does your position on the production of those records change at this time?

MR. RICHARDSON: No, Your Honor, it hasn't. It hasn't for a number of reasons, including, of course, our review of the opposition papers, our review of the case law in the Eastern District and other district courts regarding production when a motion to dismiss is pending before the Court. And also, of course, recent cases that support defendant's motion to dismiss, including, in particular, the *Tarsio v. FCA U.S*. case, which was issued from the Southern District of New York on April 8th of 2024. That case and others, we

believe, support very clearly defendant's motion to dismiss the Second Amended Complaint and to dismiss the action in its entirety.

Given the status of the case, which, it's still early on, there's been no discovery conference as yet, and the plaintiffs have shown no prejudice that they will suffer by a stay of -- I say "a stay of discovery," again, there's been no discovery scheduled in this case as yet. But given that they've shown no prejudice, there will be some burden to the defendant in producing communications under the Eastern District case law and other circuit case law -- I'm sorry, district case law. And we believe that this discovery should not go forward at this time.

If I may, just for a moment, Your Honor, as far as any concern about destruction of documents, they've asked for the communications between the defendant, or really the defendant's counsel that was representing the defendant in connection with the recall that was approved and issued by the CPSC. Those documents will not be destroyed.

We have actually gathered those documents subject to review and confirmation, which we have not reviewed yet. But there is no risk -- there

shouldn't be any risk of destruction of those documents while the motion to dismiss is pending before the Court.

THE COURT: Mr. Richardson, it seems to me -- and the Court obviously hasn't reviewed any of the motion papers -- but it seems to me that a representation was made in your opening motion to dismiss, that there was some reference to these documents or defendants asking the Court to take judicial notice of information in connection with the recall, perhaps even communications between defendants and the Commission.

Do you want to address that point?

MR. RICHARDSON: Sure, Your Honor, and respectfully, no, that's not correct.

In our opening brief, which the Court, of course, hadn't seen because under the Judge's bundling rules, we haven't filed those, but the reference to documents are documents that are CPSC documents that are publicly available on the CPSC's website.

We, of course, referenced the recall notice itself, which is identified or referenced in the Second Amended Complaint. So that is within -- within the Second Amended Complaint itself. We did

not reference or use communications between the defendant and the CPSC, either in our letter to the Court or in our motion papers.

THE COURT: Okay. Let me just hear from plaintiffs.

Mr. Strauss or Mr. George, do you want to be heard?

MR. STRAUSS: Sure, Your Honor. I think Matt George is going to address that.

MR. GEORGE: We appreciate the opportunity to be heard on this this morning.

Just briefly, a couple, I think, counterpoints to this, and --

THE COURT: Let me stop just for my benefit.

Who's speaking? Who is this, Strauss or George?

MR. GEORGE: Sure, Your Honor. This is Mr. George.

THE COURT: Okay. Go ahead.

MR. GEORGE: Yes, thank you.

So just a couple quick, I think, rebuttal points here.

I think that, you know, one thing that we're overlooking -- and I think it would benefit

the Court, obviously, to have, you know, the ability to peruse these papers. But the large crux of the motion to dismiss, in fact, I think in a 30-page brief, you know, almost half of the pages are dedicated to getting the case dismissed based on this -- entirely dismissed based on this recall defense.

And the materials that were submitted with the motion included copies of the recall, I guess notices that the CPSC issued, as well as some other booklets and other materials that the defendant has said the CPSC promulgates that also go to one specific issue regarding whether or not these products can be resold on the market. And I think that there's a dispute about how that works under the applicable law.

But I think the more important point is that the sort of spin that's been placed on the recall is that this is kind of a done deal and that there's nothing to see here.

And so our view is, as set forth in our papers, we're hamstrung a bit in terms of trying to respond to all of that because we think it's a fact-intensive question about the sufficiency of the recall, about what went behind -- went on behind the

scenes behind the recall. I think, as indicated by the CPSC's denial of our FOIA request, there's testing materials, there's other documents that seem really pertinent to the issues in the case, pertinent to the motion to dismiss, as the defendant has postured it.

And so I think on fairness and balance, and given that it sounds like the defendant has either collected or provided much of these materials to their counsel, it doesn't seem like it would place a lot of burden on the defendant to provide those. We think that, again, the recall is a somewhat fact-intensive inquiry and that we have been hamstrung in our ability to fully respond on those issues in the motion to dismiss.

And so we've responded to the request for judicial notice by also trying to submit some additional materials regarding the CPSC. But again, as we lay out in our papers, we don't believe sort of all the cards are face up on the table for the Court in this instance.

And it's, I think, a little bit of a difficult position for consumers like my client to sort of be just told, like, there's nothing to see here. You know, there's no safety concerns. And

yet, what the CPSC is telling us is that there's still an active law enforcement investigation, that these materials are essentially, you know, not able to be accessed by the public. And similarly, we're running into similar roadblocks in court.

So, you know, we think that they need to be produced now that the case has been pending for over a year. We don't think that, again, we're having a full range of all discovery at this point, but on balance, we think it makes sense to get things moving.

And I just want to make one last quick point about the preservation issue and the potential prejudice that goes along with that.

I think, as Your Honor remembers, we were able to issue some preservation subpoenas to third-party retailers that sold the Mockingbird strollers, and we've done that successfully. I believe at least two of the three recipients acknowledged receipt of those.

But, you know, within the CPSC materials, we assume that some of the product testing perhaps has been done by third-party labs, so we think that there may be other identities of other third parties with discoverable information who are not under

preservation orders. And even though the defendant may have retained some of those materials, there may also be third parties that have materials that could be identified from the CPSC production.

So I think, you know, it's a complex issue. It's a little bit of a unique issue that I haven't dealt with in prior cases, but the recall is really front and center here, and it's going to be front and center for -- I believe it's Judge Reyes who's going to be deciding the motion to dismiss.

And so that's where we're at.

THE COURT: I know you've already served your opposition to the motion to dismiss, but Mr. George, what is it in these communications between defendants and the Commission you think you need to be able to fully respond to the motion to dismiss? Do you have a sense? What is it specifically that you think you need?

MR. GEORGE: Yeah, well, I think that the way that the recall has been sort of postured to the Court by the defendant is that -- again, that there's nothing to see here, that everything's on the up and up, and that it's essentially a closed case. And it doesn't seem like that's what the CPSC is communicating to the plaintiffs.

And so I think there's a real disconnect there. And I think that we would like to be able to see what actually is being said back and forth.

For example, is the CPSC saying, guys, we're not kind of giving you a clean bill of health yet, because we need to see whether this fix-it kit that you sent consumers needs to be out on the streets and sidewalks for six months or a year. Perhaps they made other recommendations to the defendant about other types of relief they could have provided consumers. Perhaps there's been additional safety incidents that -- like we've seen on social media that are cited in our complaint, of which the defendant has attacked quite, quite vociferously in its motion to dismiss, basically saying that these accounts of consumers are not verified.

And if the defendant has also received those accounts of consumers and that those consumers have reported those incidents to CPSC, we think that would be further verification that this is, you know, a significant problem.

So I think there could be a bevy of materials in there that would be helpful to respond to the defendant's arguments on the motion to

dismiss.

THE COURT: So, Mr. George, I'm looking at your Exhibit 1 to the letters, the response to your FOIA request. Now, the Commission notes that an investigation is still pending and that you may renew your request after the investigation has closed.

Do you know whether the investigation is still pending or whether it has closed? Do you have any insights at this time?

MR. GEORGE: I don't have any further communications with them since this, March 6. I guess we're coming up on two months, but we can certainly reach back out to them.

THE COURT: All right. Mr. Richardson, do you know?

MR. RICHARDSON: I believe I know. I believe that the CPSC continues to monitor the effectiveness of the recall.

And if I may, for a moment, Your Honor, respectfully to Mr. George, I think that part of his concern comes from a lack of understanding of how the CPSC works in a recall situation.

And just to be clear, defendant didn't represent or say the recall is done, you know, we're

washing our hands, all good here. What happens is, after a recall is announced, of course, it takes some time for consumers to respond to the recall. In some cases it can take months. In some cases it can take well over a year.

And the CPSC monitors the recalls, gets reports of the effectiveness, how many consumers have participated in the recall, and it doesn't often -- it does not close that investigation. And I'm speaking generally, not specific to this case. It does not close that investigation, generally, for a year, or in some cases, more than a year.

So to say, you know, this is a law enforcement investigation, and respectfully, to potentially try to taint the response by the CPSC to the FOIA notice, to suggest that there's some mischief or wrongdoing here is just misplaced.

But to answer Your Honor's question, I believe that the CPSC has not closed its files as yet, because they continue to make sure that the reinforcement kit has been effective and that there are no further reports of injuries.

THE COURT: Mr. Richardson, do you have a sense as to how long this investigation may remain open?

MR. RICHARDSON: I can't say for sure. I would imagine that it will be closed within the next three to six months, because the announcement was -- I think it was, what, March of 20- -- I'm sorry, November of '22. I'd have to go check. I'm just not remembering off the top of my head, but I think it's been going on for just over a year now.

And again, in my experience, that's not unusual at all.

THE COURT: Now, once they close the investigation, do you think your client will be notified?

MR. RICHARDSON: Yes.

THE COURT: Okay.

MR. RICHARDSON: Yes, it certainly should be notified -- or, well, to say, "my client," my client or its counsel that has handled the recall with the CPSC, meaning, the law firm that represented Baby Generation in connection with the recall. Yes.

THE COURT: Understood.

Is that your law firm or some other law firm?

MR. RICHARDSON: No, that is another law firm.

THE COURT: Okay. All right.

Mr. George, at this time, I'm denying your request for those communications. I'm guided in large part by the FOIA response from the Commission where they say production of this information would harm its investigation while the recall is still in monitoring status.

I am aware that you are trying to obtain these documents from, now, the defendant. But given that the government believes that this would harm its investigation, which they are still monitoring, I'm going to defer in this instance, at this time to the Commission. They are not a party to this action at this time.

I'm not closing the door to you renewing this request in the future, but I do note in the FOIA letter, that you do have an opportunity to appeal this determination. I'm not sure whether you have or not, but that is another mechanism by which you can try to obtain these documents from the Commission if you believe you are entitled to them now. But I'm guided, in large part, by the findings by the Commission that it would harm their ongoing investigation of the recall.

All right. So I'm denying the request

without prejudice at this time to obtaining those documents from the defendants, okay. All right.

Anything else for plaintiff today, Mr. George?

MR. GEORGE: We don't have anything further, Your Honor.

THE COURT: All right. Anything else for defendants, Mr. Richardson?

MR. RICHARDSON: No, Your Honor. Thank you, Your Honor.

THE COURT: All right. All I ask is, once the parties have received a decision on the motion to dismiss, within seven days notify the Court and we'll put this back on the calendar, if necessary, okay?

Mr. Richardson, I'm also going to ask you, once your client becomes aware or counsel involved in the recall becomes aware that the investigation has closed, I want you to also notify Mr. George as well, okay?

MR. RICHARDSON: Absolutely, Your Honor. Thank you.

THE COURT: All right. With that, we are adjourned. Thank you, everyone.

0o0

C E R T I F I C A T E

I, Adrienne M. Mignano, certify that the foregoing transcript of proceedings in the case of Dajlani, et al., v. Baby Generation, Inc.; Docket #23CV3394 was prepared using digital transcription software and is a true and accurate record of the proceedings.

Signature _____*Adrienne M. Mignano*_____

ADRIENNE M. MIGNANO, RPR

Date:        June 8, 2024