UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

FJONA DAJLANI, ALLISON EGAN, TINA MARIE    :
BARRALES, MARITZA LIZARRAS, ANNA
PERELLA, HANNAH MCFARLAND, ELSA      :   Case No.: 1:23-cv-3394-RER-JRC
TRICOZZI AND ELIZABETH MAHER, individually
and on behalf of all others similarly situated,    :

                   Plaintiffs,      :

          - against -           :

BABY GENERATION, INC.,             :

                  Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT BABY GENERATION, INC.'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

SMITH, GAMBRELL & RUSSELL, LLP
Jeremy D. Richardson
1301 Avenue of the Americas, 21st Floor
New York, New York 10019
jrichardson@sgrlaw.com

Ian J. Dankelman (admitted *pro hac vice*)
201 North Franklin Street, Suite 3550
Tampa, Florida 33602
idankelman@sgrlaw.com

Date of Service – April 15, 2024

Baby Generation Does Not Request Oral Argument

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ..................................................................................... iii

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................. 2

    A.    Baby Generation, its Strollers, and the Voluntary Recalls ..................... 2

    B.    Plaintiffs' Claims ................................................................................ 3

ARGUMENT ................................................................................................. 8

POINT I:  THE SAC SHOULD BE DISMISSED BECAUSE PLAINTIFFS LACK STANDING TO PURSUE THE CLAIMS ASSERTED .................................................................. 9

    A.    Plaintiffs Have Not Alleged Facts to Establish Standing Under Article III ........... 9

    B.    Even if Plaintiffs Had Alleged an Injury in Fact, Their Claims Have Been Rendered Moot by Baby Generation's CPSC-Approved Voluntary Recall ......................... 10

POINT II:  PLAINTIFFS FAIL TO STATE ANY VALID CLAIMS FOR RELIEF AGAINST BABY GENERATION .................................................................. 14

    A.    Counts 1 and 2 Fail to State Claims for Deceptive Act or Practices and False Advertising Under Sections 349 and 350 of New York's General Business Law ................................................................................ 17

    B.    Count 3 Fails to State a Claim for Unlawful, Unfair and Fraudulent Business Practices Under Section 17200 of the California Business and Professions Code ................................................................................ 18

    C.    Count 4 Fails to State a Claim Under the California Legal Remedies Act ................................................................................ 20

    D.    Count 5 Fails to State a Claim for False Advertising Under Section 17500 of the California Business & Professions Code ......................... 21

    E.    Count 6 Fails to State a Claim Under the Song-Beverly Warranty Act ............... 22

    F.    Count 7 Fails to State a Claim for Violation of the Massachusetts Consumer Protection Act ................................................................................ 22

    G.    Count 8 Fails to State a Claim for Violation of the Illinois Consumer

       Fraud and Deceptive Business Act ................................................................23

H.     Count 9 Fails to State a Claim for Violation of the Michigan
       Consumer Protection Act............................................................................24

I.      Count 10 Fails to State a Claim for Violation of the Missouri
       Merchandising Practices Act ......................................................................25

J.      Count 11 Fails to State a Claim for Fraud ............................................26

K.     Count 12 Fails to State a Claim for Unjust Enrichment .......................27

L.      Counts 13 and 14 Fail to State Claims for Breach of Implied and
       Express Warranty.......................................................................................28

M.    Count 12 Fails to State a Claim for Negliegent Misrepresentation ......30

CONCLUSION...........................................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Golden Grain Co.*,
    677 F. Supp. 3d 940 (E.D. Mo. 2023).................................................................25

*Aetna Cas. and Sur. Co. v Aniero Concrete Co., Inc.*,
    404 F3d 566 (2d Cir. 2005)..........................................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).....................................................................................8

*Avery v. State Farm Mut. Auto. Ins. Co.*,
    835 N.E.2d 801 (2005)...............................................................................23

*Balles v. Babcock Power Inc.*,
    476 Mass. 565, 70 N.E.3d 905 (2017) ......................................................26

*Beeler v. Martin*,
    306 S.W.3d 108 (Mo. Ct. App. 2010).......................................................27

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).....................................................................................8

*Benson v. Fannie May Confections Brands, Inc.*,
    944 F.3d 639 (7th Cir. 2019) .....................................................................23

*Bourbia v. S.C. Johnson & Son, Inc.*,
    375 F. Supp. 3d 454 (S.D.N.Y. 2019).......................................................28

*Bower v. AT&T Mobility, LLC*,
    196 Cal. App. 4th 1545, 127 Cal. Rptr. 3d 569 (2011)............................20

*Brandt v. Bos. Sci. Corp.*,
    204 Ill. 2d 640, 792 N.E.2d 296 (2003) ...................................................29

*California v. McKale*,
    25 Cal. 3d 626 (1979) ...............................................................................18

*California-Martinez v. Metabolife Internat., Inc.*,
    113 Cal. App. 4th 181, 6 Cal. Rptr. 3d 494 (2003)...................................29

*Camacho v. Auto. Club of So. Cal.*,
    142 Cal. App. 4th 1394 (2006) .................................................................18

*Campbell v. Whole Foods Mkt. Grp.*,
    516 F. Supp. 3d 370 (S.D.N.Y. 2021)..................................................................28

*Charlton v. LG Energy Sol. Mich., Inc.*,
    2023 WL 1420726 (S.D. Cal. Jan. 31, 2023)......................................................12

*Cheng v. BMW of N. Am.*,
    2013 WL 3940815 (C.D. Cal. July 26, 2013) ......................................................11

*Custom Pack Sols., Inc. v. Great Lakes Healthcare Purchasing Network, Inc.*,
    No. 334815, 2018 WL 1020671 (Mich. Ct. App. Feb. 22, 2018)........................27

*Dagher v. Ford Motor Co.*,
    238 Cal. App. 4th 905, 190 Cal. Rptr. 3d 261 (2015).........................................22

*Dannix Painting, LLC v. Sherwin-Williams Co.*,
    732 F.3d 902 (8th Cir. 2013) .............................................................................30

*Dean v. Noble*,
    477 S.W.3d 197 (Mo. Ct. App. 2015)..................................................................26

*Dimitri Enterprises, Inc. v. Spar Insurance Agency LLC*,
    2022 WL 5237811 (2d Cir. 2022)......................................................................15

*Fiuzzi v. Paragon Sporting Goods Co. LLC*,
    212 A.D.3d 431, 181 N.Y.S.3d 544 (2023) .......................................................28

*Flores v. FCA US LLC*,
    2020 WL 7024850 (E.D. Mich. Nov. 30, 2020)............................................11, 13

*Geinko v. Padda*,
    2002 WL 276236 (N.D. Ill. Feb. 27, 2002) .......................................................15

*Gillan v. Wright Med. Tech. Inc.*,
    396 F. Supp. 3d 844 (E.D. Mo. 2019).................................................................29

*Hadley v. Chrysler Grp., LLC*,
    624 F. App'x 374 (6th Cir. 2015) .......................................................................13

*Hall v. Time Inc.*,
    158 Cal. App. 4th 847 (2008) .............................................................................19

*Hochheiser v. Alin*,
    59 Misc. 3d 1207(A), 100 N.Y.S.3d 609 (N.Y. Sup. Ct. 2018) ...........................27

*Jett v. Zeman Homes, Inc.*,
    2018 IL App (1st) 170690-U ...............................................................................26

*JMP Sec. LLP v. Altair Nanotechnologies Inc.*,
  880 F. Supp. 2d 1029 (N.D. Cal. 2012) ....................................................30

*Kussy v. Home Depot U.S.A. Inc.*,
  No. 06-12899, 2006 WL 3447146 (E.D. Mich. Nov. 28, 2006) ...........................25

*Kyszenia v. Ricoh USA, Inc.*,
  583 F.Supp.3d 350 (E.D.N.Y. 2022) .........................................................8

*Lewis v. Casey*,
  518 U.S. 343 (1996) .............................................................................16

*Lim v. The.TV Corp. Internat.*,
  99 Cal. App. 4th 684, 121 Cal. Rptr. 2d 333 (2002) ...................................26

*Media Bank, LLC v. SCOTTeVEST, Inc.*,
  No. 19-CV-2465, 2020 WL 6825691 (N.D. Ill. Nov. 20, 2020) .......................30

*Meinhold v. Sprint Spectrum*,
  2007 WL 1456141 (E.D. Cal. 2007) .........................................................19

*Miller v. Schweickart*,
  413 F. Supp. 1059 (S.D.N.Y. 1976) .........................................................15

*Moorman Mfg. Co. v. Nat'l Tank Co.*,
  91 Ill. 2d 69, 435 N.E.2d 443 (1982) .......................................................30

*Morgan v. Harmonix Music Sys., Inc.*,
  2009 WL 2031765 ...............................................................................22

*N. Am. Cath. Educ. Programming Found., Inc. v. Cardinale*,
  567 F.3d 8 (1st Cir. 2009) .....................................................................30

*Neilson v. Union Bank of California, N.A.*,
  290 F. Supp. 2d 1101 (C.D. Cal. 2003) ....................................................30

*Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors Am., Inc.*,
  372 Ill. App. 3d 354, 865 N.E.2d 334 (2007) ...........................................29

*In re OnStar Cont. Litig.*,
  278 F.R.D. 352 (E.D. Mich. 2011) ......................................................24, 25

*Patellos v. Hello Prods., LLC*,
  523 F. Supp. 3d 523 (S.D.N.Y. 2021) ......................................................28

*Patenaude v. Orgain, LLC*,
  594 F. Supp. 3d 108 (D. Mass. 2022), appeal dismissed, No. 22-1255, 2022
  WL 4844337 (1st Cir. July 18, 2022) .......................................................22

*Pelman v. McDonald's Corp.*,
237 F. Supp. 2d 512 (S.D.N.Y. 2003).....................................................................17

*Peterson v. Cellco P'ship*,
164 Cal. App. 4th 1583, 80 Cal. Rptr. 3d 316 (2008)..............................................27

*PharmacyChecker.com v. Nat'l Ass'n of Boards of Pharmacy*,
629 F. Supp. 3d 116 (S.D.N.Y. 2022)......................................................................17

*PNC Bank, Nat. Ass'n v. Wolters Kluwer Fin. Servs., Inc.*,
73 F. Supp. 3d 358 (S.D.N.Y. 2014).........................................................................29

*Ragland Mills, Inc. v. Gen. Motors Corp.*,
763 S.W.2d 357 (Mo. Ct. App. 1989).......................................................................29

*Rembrandt Const., Inc. v. Butler Mfg. Co.*,
No. 270577, 2006 WL 3375249 (Mich. Ct. App. Nov. 21, 2006)...........................30

*Riker v. Premier Cap., LLC*,
No. 15-CV-8293, 2016 WL 5334980 (S.D.N.Y. Sept. 22, 2016)............................30

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004)........................................................................................8

*Rugg v. Johnson & Johnson*,
No. 17-CV-05010-BLF, 2018 WL 3023493 (N.D. Cal. June 18, 2018) .................29

*Sexton v. Ryder Truck Rental, Inc.*,
413 Mich. 406, 320 N.W.2d 843 (Mich. 1982) ......................................................24

*Shaeffer v. Califia Farms, LLC*,
44 Cal. App. 5th 1125, 258 Cal. Rptr. 3d 270 (2020)............................................21

*Sharp v. FCA US LLC*,
637 F. Supp. 3d 454 (E.D. Mich. Oct. 25, 2022).........................................11, 12, 13

*Sherman v. Ryan*,
392 Ill. App. 3d 712, 911 N.E.2d 378 (2009) ........................................................27

*Siedlik v. Stanley Works, Inc.*,
205 F. Supp. 2d 762 (E.D. Mich. 2002)...................................................................29

*Spector v. Wendy*,
63 A.D.3d 820, 881 N.Y.S.2d 465 (2009) ..............................................................26

*Spokeo, Inc. v. Robbins*ˏ
578 U.S. 330 (2016).............................................................................................9, 10

*SSDD Enter., Inc. v. Village of Lansing*,
    1996 WL 238931 (N.D. Ill. May 3, 1996) ..............................................................16

*Sugasawara v. Ford Motor Co.*,
    2019 WL 3945105 (N.D. Cal. Aug. 21, 2019) ......................................................13

*Sweeney v. DeLuca*,
    No. 042338, 2006 WL 936688 (Mass. Super. Mar. 16, 2006) ..............................27

*Tarsio v. FCA US LLC*,
    2024 WL 1514211 (S.D.N.Y. Apr. 8, 2024) ........................................................13

*Teal v. Argon Med. Devices, Inc.*,
    533 F. Supp. 3d 535 (E.D. Mich. 2021) ..............................................................29

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ..............................................................................................9

*Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of New York*,
    734 F. Supp. 2d 368 (S.D.N.Y. 2010) ................................................................30

*Tyler v. Michaels Stores, Inc.*,
    464 Mass. 492, 984 N.E.2d 737 (2013) ..............................................................23

*In re UBS AG Securities Litigation*,
    2012 WL 4471265 ................................................................................................15

*Vess v. Ciba–Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ............................................................................19

*William Beaumont Hosp. Sys. v. Morgan Stanley & Co.*,
    677 Fed. App'x 979 (6th Cir. 2017) ....................................................................30

*Winzler v. Toyota Motor Sales U.S.A., Inc.*,
    681 F.3d 1208 (10th Cir. 2012) ....................................................................11, 13

*Wiseberg v. Toyota Motor Corp.*,
    2012 WL 1108542 (D.N.J. Mar. 30, 2012) ........................................................15

*Worth v. Selden*,
    422 U.S. 490 (1975) ............................................................................................16

*Zoll Med. Corp. v. Barracuda Networks, Inc.*,
    565 F. Supp. 3d 101 (D. Mass. 2021) ................................................................29

## Statutes

15 U.S.C. § 2063(a) ..................................................................................................2

15 U.S.C. § 2064(b) .................................................................................................2

Cal. Civ. Code § 1791 .............................................................................................22

Cal. Civ. Code § 1792 .............................................................................................22

California Business & Professions Code Section 17200 ........................................18

California Business & Professions Code Section 17500 ........................................21

Consumer Product Safety Act Section 19 (15 U.S.C. § 2068) ..............................16

Consumer Product Safety Improvement Act (15 U.S.C. §§ 2051–2089)................2

Mass. Gen. Laws Ann. ch. 106, § 2-313 ...............................................................29

N.Y. Gen. Bus. Law § 349 ...............................................................................17, 18

N.Y. Gen. Bus. Law § 350 ......................................................................................17

## Other Authorities

16 CFR §1115.20 ..................................................................................................2, 3

16 CFR §1227.2 ........................................................................................................2

Fed. R. Civ. P. 8(a)(2) ..............................................................................................8

Fed. R. Civ. P. 9(b) ..........................................................................................*passim*

Fed. R. Civ. P. 12(b)(1)......................................................................................1, 10

Fed. R. Civ. P. 12(b)(6)............................................................................................1

# INTRODUCTION

Seeking to capitalize on Baby Generation, Inc's ("Baby Generation") voluntary recall to repair certain of its baby strollers, which the Consumer Product Safety Commission (the "CPSC")[1] approved as a complete remedy for any purported defects, eight individuals filed this lawsuit against Baby Generation. None of these eight Plaintiffs allege that the Baby Generation stroller they have suffers from the defect remedied by the recall; and four of them did not even purchase a stroller. Nonetheless, Plaintiffs assert a host of claims against Baby Generation based on its marketing and sales of strollers, including common law fraud, consumer fraud, breaches of warranty and unjust enrichment. And, after cruising the internet to find (unverified) instances of consumers complaining about Baby Generation's strollers, Plaintiffs also purport to assert these claims on behalf of every consumer who purchased the strollers in the United States.

As explained below, Plaintiffs' Second Amended Complaint ("SAC") fails to state legally viable claims for relief against Baby Generation and should be dismissed for two principal reasons:

First, Plaintiffs' claims have been rendered moot by the voluntary recall approved and supervised by the CPSC which provides Plaintiffs full relief for any damages they may have suffered. As a result, Plaintiffs lack standing to pursue their claims in this lawsuit. *See* Fed. R. Civ. P. 12(b)(1).

Second, Plaintiffs fail to state valid claims for relief. Although the SAC contains over 200 numbered paragraphs, few of the allegations are specifically related to any of the Plaintiffs. Those allegations that are specific to the Plaintiffs do not state valid claims against Baby Generation upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6).

---

[1] Established by Congress in the Consumer Product Safety Act, the CPSC is the regulatory agency responsible for protecting the public from unreasonable risks of injury and death associated with consumer products.

For the reasons set forth herein, Plaintiffs' SAC should be dismissed with prejudice.

# BACKGROUND

## A. Baby Generation, its Strollers, and the Voluntary Recalls

Baby Generation sells baby strollers and related accessories under the brand name Mockingbird, including a Single Stroller and a Single-to-Double Stroller (SAC ¶¶1, 18). Baby Generation's strollers are regulated by the CPSC pursuant to authority granted by the Consumer Product Safety Act (the "CPSA") and the Consumer Product Safety Improvement Act (the "CPSIA") (15 U.S.C. §§ 2051–2089).[2] Even though Baby Generation's strollers were tested to confirm they complied with all applicable safety standards,[3] Baby Generation learned that a small number of its Single-to-Double Stroller frames had formed cracks, and that with continued use of the strollers the cracks could spread. In some cases, customers reported that continued use of the stroller after cracks had formed resulted in the frame breaking. Baby Generation investigated the issue, prepared a "Section 15(b)" report[4] and submitted it to the CPSC for review and approval. Baby Generation's report included a Corrective Action Plan (a "CAP")[5] as is required before a manufacturer may proceed with a remedy.[6] The CPSC describes the purpose of a CAP and what it does, in relevant part, as follows:

---

[2] Consumer product manufacturers must comply with safety and testing standards and have a legal obligation to report to the CPSC when defects are discovered (16 CFR §1115). 16 CFR §1227.2 requires carriages and strollers to "comply with all applicable provisions of ASTM F833–21, Standard Consumer Safety Performance Specification for Carriages and Strollers, approved June 15, 2021."

[3] Baby carriages and strollers must be tested by third-party laboratories accepted by CPSC to perform mandatory testing as required to support a certification of compliance for children's products. *See* 15 U.S.C. §2063(a).

[4] *See* 15 U.S.C. §2064(b).

[5] CAPs, which are required by federal regulation, must indicate whether the manufacturer is repairing or replacing the product, or refunding its purchase price (16 CFR §1115.20(a)(1)(vi)).

[6] Defendant respectfully requests that the Court take judicial notice of the CPSC's Product Safety Planning, Reporting, and Recall Handbook (the "Recall Handbook"). A copy is attached to the Richardson Declaration as Exhibit 1 and is available on the CPSC's website at www.cpsc.gov/s3fs-public/CPSCRecallHandbookAugust2021.pdf.

> An effective CAP will mitigate the hazard to consumers and correct
> or prevent the problem in any future production or similar product.
> A common component of a CAP is a recall. A recall is the
> component of a CAP that provides for public notice and a remedy
> for consumers.[7]

Baby Generation's CAP recommended that it would provide to owners of its Single-to-Double Stroller a free repair kit to reinforce each stroller's frame, thereby eliminating the already-unlikely possibility of the frame breaking.[8] Baby Generation's CAP was examined by CPSC staff and approved by the CPSC,[9] which announced a recall to repair on November 10, 2022 (SAC ¶28).[10] Even after the recall of the Single-to-Double Stroller was announced, Baby Generation continued its investigation to ensure the safety of all of its strollers and determined that the same issue could possibly occur with its Single Stroller. Accordingly, Baby Generation proposed to the CPSC to expand the recall to repair to its Single Stroller, which the CPSC also approved and announced through an expanded recall on March 17, 2023 (SAC ¶29).[11] Both CPSC-approved CAPs instructed consumers to obtain a free repair kit from Baby Generation.

## B. Plaintiffs' Claims

On May 4, 2023, six months after the CPSC announced Baby Generation's voluntary recall, Plaintiffs Fjona Dajlani and Allison Egan filed this lawsuit against Baby Generation. On

---

[7] *See* the Recall Handbook at page 15 (Richardson Declaration, Exhibit 1).

[8] The proposed CAP identified by lot number those Single-to-Double strollers which may exhibit the safety issue, and thus a repair kit was necessary (SAC ¶30).

[9] CPSC staff must examine the CAP and consider whether the proposed remedial measures will eliminate the reported safety concern before determining whether to recommend the Commission's acceptance of the CAP. Among other factors, the staff will consider favorably both the promptness of a manufacturer's reporting and any remedial actions taken by the manufacturer in the interest of public safety. *See* 16 CFR §1115.20.

[10] Defendant respectfully requests that the Court take judicial notice of the November 10, 2022, recall notice. A copy is attached to the Richardson Declaration as Exhibit 2 and is available on the CPSC's website at https://www.cpsc.gov/Recalls/2023/Mockingbird-Recalls-Single-to-Double-Strollers-Due-to-Fall-Hazard

[11] Defendant respectfully requests that the Court take judicial notice of the March 17, 2023, recall notice. A copy is attached to the Richardson Declaration as Exhibit 3 and is available on the CPSC's website at https://www.cpsc.gov/Recalls/2023/Mockingbird-Expands-Recall-to-Include-Single-Strollers-Due-to-Fall-Hazard

June 14, 2023, Dajlani and Egan filed a first amended complaint (Dkt. #11), and, on November 21, 2023, Dajlani and Egan, joined by Plaintiffs Tina Marie Barrales, Maritza Lizarraras, Anna Perella, Hanna McFarland, Elsa Tricozzi and Elizabeth Maher, filed the current SAC (Dkt. #20).

Although the SAC spans fifty-seven pages, very few of the allegations stated in 223 individually numbered paragraphs specifically address the individual Plaintiffs. Briefly, those allegations are as follows:

**Dajlani**: Dajlani, a New York citizen (SAC ¶9), alleges (in 5 paragraphs) that she purchased a stroller with accessories in September 2022 for $969.01 (SAC ¶50). Dajlani does not allege which stroller she purchased. Dajlani alleges only that she became aware of the recall when a wheel on her stroller broke and requested a refund, which she did not receive (SAC ¶¶51-52). Dajlani does not allege that her stroller suffers from the defect that was the subject of the recall, only the broken wheel, which Dajlani alleges that Baby Generation told her it would replace (SAC ¶52). Dajlani does not allege that she participated in the recall/repair.

**Egan**: Egan, a Massachusetts citizen (SAC ¶10), alleges (in 4 paragraphs) that she received a "Mockingbird Single Stroller" as a gift (SAC ¶54). Egan alleges that "sometime in 2022" she upgraded to a "Single to Double Stroller" paying "approximately" $414.38 for it and "accessories" (SAC ¶55). Egan alleges that *after* learning of the recall, she requested a refund in or around November 2022, which she has not received (SAC ¶56). Egan does not allege that her "Single to Double Stroller" suffers from the defect that was the subject of the recall. Egan does not allege that she participated in the recall/repair.

**Barrales**: Barrales, a California citizen (SAC ¶11), alleges (in 6 paragraphs) that she purchased a "Single to Double Stroller" with "accessories" in or around June 2021 for "approximately" $600 (SAC ¶58). Barrales alleges that she experienced "issues" with the stroller

"within a few months" (SAC ¶59), but does not allege that her stroller suffered from the defect that was the subject of the recall. Instead, Barrales alleges that she learned about the recall in Spring 2023, after which she chose not to use the stroller and purchased another (SAC ¶61). Barrales does not allege that she participated in the recall/repair, nor does Barrales allege that she requested a refund.

**Lizarraras**: Lizarraras, a California citizen (SAC ¶12), alleges (in 9 paragraphs), that she was originally "gifted" a Single Stroller in August 2020, which she upgraded to a Single to Double Stroller in September 2020 for approximately $45 (SAC ¶64). Lizarraras alleges that she experienced "issues" with the stroller "failing to close and fold properly" (SAC ¶66), but does not allege when she experienced those issues. Lizarraras alleges that she contacted customer support in July 2022 about the folding issue, but was told that her stroller was out of warranty (SAC ¶67). Lizarraras alleges that she purchased a different stroller as a result (SAC ¶68). Lizarraras alleges that she became aware of the recall in October 2022, but does not allege that she participated or requested a refund (SAC ¶69). Lizarraras does not allege that her stroller suffered from the defect that was the subject of the recall.

**Perella**: Perella, a California citizen (SAC ¶13), alleges (in 6 paragraphs) that she was "gifted" a Single to Double Stroller in August 2021 (SAC ¶73). Perella alleges that she purchased some accessories (SAC ¶73), but not a stroller. Perella alleges that she learned of the recall in November 2022 (SAC ¶74). Perella does not allege that her stroller suffered from the defect that was the subject of the recall, but alleges that she nonetheless participated and installed the frame reinforcement kit (SAC ¶74). Perella does not allege that she discontinued using the stroller or purchased another stroller, nor does she allege that she requested a refund.

**McFarland**: McFarland, a Missouri citizen (SAC ¶14), alleges (in 5 paragraphs) that she purchased a Single to Double Stroller in April 2022 for approximately $526.34 (SAC ¶78). McFarland alleges that she became aware of the recall in November 2022, and that she participated and installed the frame reinforcement kit (SAC ¶79). McFarland alleges that after learning of the recall she used the stroller less (SAC ¶80). McFarland alleges that when she used the stroller in November 2023, the frame cracked in half near the brake (SAC ¶81). McFarland, however, does not allege that this incident was the result of the stroller suffering from the defect that was the subject of the recall. McFarland also does not allege that she requested a refund.

**Tricozzi**: Tricozzi, an "Illinois and/or Michigan citizen" (SAC ¶15), alleges (in 4 paragraphs) that she purchased a Single to Double Stroller in April 2021 for approximately $334.98 (SAC ¶83). Tricozzi also alleges that she purchased accessories in February 2023 (SAC ¶83). Tricozzi alleges that she became aware of the recall in November 2022 (before she purchased accessories), and that she participated and installed the frame reinforcement kit (SAC ¶84). Tricozzi does not allege that her stroller suffers from the defect that is the subject matter of the recall. Tricozzi does not allege that she requested a refund or purchased a different stroller, and specifically alleges that she has continued to use it (SAC ¶85).

**Maher**: Maher, an Illinois citizen (SAC ¶16), alleges (in 4 paragraphs) that she was "gifted" a Single Stroller and some accessories in or around August 2019, and that she upgraded to a Single to Double Stroller in January 2022 for approximately $447.79 (SAC ¶87). Maher alleges that she became aware of the recall in November 2022, and that she participated and installed the frame reinforcement kit (SAC ¶88). Maher does not allege that her stroller suffers from the defect that is the subject matter of the recall. Maher does not allege that she requested a

refund or purchased a different stroller, and specifically alleges that she continued to use it (SAC ¶89).

The above embodies the totality of the SAC's allegations specific to Plaintiffs. The rest of the factual allegations in the SAC consist of publicly available details about Baby Generation's recall coupled with a host of unverified hearsay postings and materials that Plaintiffs' counsel apparently pulled from the internet – none of which are tied or related to any of the eight Plaintiffs.

Indeed, the SAC is most notable for what Plaintiffs do not allege. For example,

- no Plaintiff alleges that her stroller actually suffered from the defect that was the subject of Baby Generation's recall;

- although admitting the recall only involved certain lots, half of the Plaintiffs (Dajlani, Egan, Barrales and Lizarraras) do not allege that their stroller had a lot number subject to recall or that they participated in the recall;

- of the eight Plaintiffs, only three (Dajlani, Barrales and Lizarraras) allege they experienced any problems with their strollers at all; none of the other five plaintiffs allege they have experienced any problems; and

- most significantly, despite including a single sentence in each Plaintiff's allegations that "Defendant's misrepresentations and omissions were substantial factors in Plaintiff's decisions to purchase the Stroller and Accessories," no Plaintiff alleges that she actually saw any alleged misrepresentations or other materials containing alleged omissions, much less than she saw them prior to and in connection with any alleged purchases of Baby Generation's strollers or accessories.

Notwithstanding the insufficient allegations made about themselves, without alleging the key facts set forth above, Plaintiffs assert 15 separate causes of action against Baby Generation. As explained below, all of Plaintiffs' claims fail and should be dismissed.

# ARGUMENT

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint, however, must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555-56. Factual conclusions are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth"). Nor are legal conclusions. *Id*. ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations").

Only "well-pleaded factual allegations" may be credited in determining whether a complaint "plausibly give[s] rise to an entitlement to relief." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.*, citing Fed. R. Civ. P. 8(a)(2). In addition, the majority of Plaintiffs' claims sound in fraud and are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b), See *Aetna Cas. and Sur. Co. v Aniero Concrete Co., Inc.*, 404 F3d 566, 583 (2d Cir. 2005); *Kyszenia v. Ricoh USA, Inc.*, 583 F.Supp.3d 350 (E.D.N.Y. 2022). To satisfy Rule 9(b), a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." See *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (citing *Mills v. Polar Molecular Group*, 12 F.3d 1170, 1175 (2d Cir. 1993).

# POINT I
## THE SAC SHOULD BE DISMISSED BECAUSE PLAINTIFFS LACK STANDING TO PURSUE THE CLAIMS ASSERTED

As a threshold matter, Plaintiffs' SAC should be dismissed because the eight Plaintiffs lack standing to assert their purported claims. To have standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robbins*¸ 578 U.S. 330, 338 (2016), citing *Lujan v. Defenders of Wildlife*¸ 504 U.S. 555, 560-61 (1992).

Injury in fact – "the first and foremost of standing's three elements" – is "a constitutional requirement." *Id.* at 339. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.*, citing *Lujan*, 504 U.S. at 560. To be "particularized," an injury "must affect the plaintiff in a personal and individual way." *Id.* To be "concrete," an injury "must be *'de facto'*; that is, it must actually exist." *Id.* at 340.

As the parties invoking federal jurisdiction, Plaintiffs bear the burden of each required element of standing. *Spokeo*, 578 U.S. at 338. When a case is at the pleading stage, "the plaintiff must 'clearly allege facts demonstrating' each element." *Id.*, citing *Worth v. Selden*¸ 422 U.S. 490, 518 (1975). Standing must be established on a plaintiff-by-plaintiff, claim-by-claim basis. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that the seek (for example, injunctive relief and damages").

### A. Plaintiffs Have Not Alleged Facts to Establish Standing Under Article III

Although Plaintiffs have collectively asserted 15 separate causes of action, for which they seek a laundry list of monetary damages and equitable relief, all of Plaintiffs' claims are based on

the premise that each purchased and paid for a defective Baby Generation stroller – *i.e.*, strollers that did not comport with the representations/advertising that Plaintiffs allege was false (but never saw) or with the alleged warranties Plaintiffs contend exist. Put another way, unless a Plaintiff purchased and paid for a stroller with the defect, she has suffered no particularized and concrete "injury in fact" traceable to any challenged conduct by Baby Generation alleged in the SAC and does not have standing to assert claims against Baby Generation. *Spokeo*¸ 578 U.S. at 339-40.

Here, not a single Plaintiff has alleged facts establishing her standing under Article III. No Plaintiff alleges that she purchased and paid for a Baby Generation stroller with the defect that was the subject matter of Baby Generation's recall. Perella does not allege that she purchased a stroller at all, and none of the other seven Plaintiffs allege that the strollers they did purchase suffer from the defect. Indeed, while McFarland, Tricozzi and Maher participated in the recall and thus could be presumed to have purchased strollers from the lots at issue, neither Dajlani, Egan nor Barrales alleges that the strollers they purchased come from one of those lots (Perella does not allege that the stroller she was "gifted" came from one of the lots, either).

Because no Plaintiff alleges that she purchased and paid for a stroller that suffers from the defect that is the subject of the recall, no Plaintiff has alleged facts establishing a particularized and concrete injury in fact traceable to challenged conduct alleged in the SAC. Plaintiffs therefore lack standing under Article III to assert their claims and this case should be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

**B. Even if Plaintiffs Had Alleged an Injury in Fact, Their Claims Have Been Rendered Moot by Baby Generation's CPSC-Approved Voluntary Recall**

Even if each of the Plaintiffs had standing to pursue a claim against Baby Generation for purchase of an allegedly defective stroller, their claims and the SAC should still be dismissed. Any

claims for relief Plaintiffs purport to assert have been rendered moot by Baby Generation's voluntary recall, agreed to and supervised by the CPSC.

As courts recognize, "there are circumstances under which a controversy, not constitutionally moot, is so 'attenuated that considerations of prudence and comity for coordinate branches of government counsel to stay its hand, and to withhold relief it has the power to grant.'" *See Cheng v. BMW of N. Am.*, 2013 WL 3940815, at \*3-4 (C.D. Cal. July 26, 2013). In those circumstances, as now Justice Gorsuch held, "the anticipated benefits of a remedial decree no longer justify the trouble of deciding the case on the merits," and "equity may demand not decision but dismissal." *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012).

The doctrine is known as "prudential mootness." See, *e.g.*, *Flores v. FCA US LLC*, 2020 WL 7024850, \*3 (E.D. Mich. Nov. 30, 2020) (citing *Winzler*). It applies where the alleged injury and remedy at issue in a lawsuit is being addressed by a coordinate branch of government (*id.*). In those circumstances, "consideration of prudence and comity for coordinate branches of government counsel the court to stay its hand." *Sharp v. FCA US LLC*, 637 F. Supp. 3d 454, 464 (E.D. Mich. Oct. 25, 2022) (quoting *Nasoordeen v. F.D.I.C.*, 2010 WL 1135888 (C.D. Cal. Mar. 17, 2010)). Where a coordinate branch of government has provided remedial commitments to a plaintiff, affording a judicial remedy on top of it "risks needless inter-branch disputes over the execution of the remedial process and the duplicative expenditure of finite public resources." *Id.* (quoting *Winzler*, 681 F.3d at 1211).

Prudential mootness requires dismissal of Plaintiffs' alleged defect-based claims here. As numerous courts hold, where, as here, there is a "remedial commitment" from a regulatory agency for an alleged product defect via an administratively overseen recall, a plaintiff's defect-based claims, for both damages and equitable relief, are moot and should be dismissed. In *Sharp*, for

example, plaintiffs filed a lawsuit against FCA, seeking damages and equitable relief, within days of an announcement that the National Highway Traffic Safety Administration began investigations of certain [FCA-manufactured] trucks. 637 F. Supp. 3d 454, 465. Less than two weeks later, [FCA] announced a voluntary recall of impacted vehicles and promised to repair the vehicles at no cost. *Id*. The district dismissed the lawsuit. As the court explained, the recall rendered the case moot because the defendant: (i) acknowledged the defect prior to the lawsuit; (ii) promised to repair the defect for free as quickly as possible; and (iii) did in fact repair the plaintiff's vehicle. *Id*. at 466.

*Charlton v. LG Energy Sol. Mich., Inc.*, 2023 WL 1420726, at *1 (S.D. Cal. Jan. 31, 2023) is particularly instructive. There, plaintiff alleged that he relied on LG's representations in purchasing batteries LG later admitted were defective (*id.* at *1), and sought injunctive relief, compensatory and punitive damages, costs, and attorneys' fees. *Id*. But LG had announced voluntary recalls of the batteries at issue in conjunction with the CPSC *before* Charlton filed suit. *Id*. Like the Plaintiffs here, Charlton did not allege any injury, damage, or expense beyond his initial purchase, nor did he allege that the battery purchased actually experienced the alleged defect. *Id*. The court agreed with LG that Charlton lacked standing because the "recall program already address[ed] the alleged battery defect (and the harm flowing from the defect) on which Plaintiff based all of his claims." *Id*. at *2. There was no "live case or controversy" to be adjudicated under Article III, the case was moot. *Id*. Significantly, the court flatly rejected the argument that because Charlton had not received a refund of his purchase price he had standing to sue. "Plaintiff cannot elect his preferred remedy." *Id*. at *4-5. The court instead held that LG's recall "made reasonable efforts to correct the [] battery defect," which extinguished any claim to monetary recompense through a lawsuit. *Id*. at *5. With no "live case or controversy" remaining, the court dismissed the complaint. *Id*.

Many other courts have dismissed cases as moot because the issuance of a recall and repair deprives a party of an injury in fact based on any defect remedied by the recall and repair. See, e.g., *Singletary v. Kia America, Inc.*, (C.D.C.A. Case No. SACV 23-01955-CJC, Dkt. 29, Mar. 4, 2024); *Tarsio v. FCA US LLC*, 2024 WL 1514211 (S.D.N.Y. Apr. 8, 2024); *Hadley v. Chrysler Grp., LLC*, 624 F. App'x 374, 379-80 (6th Cir. 2015) affirming *Hadley v. Chrysler Grp LLC*, 2014 WL 988962, at *6 (E.D. Mich. Mar. 13, 2014).

This Court should do the same here. The SAC specifically alleges that Baby Generation conducted a voluntary recall of strollers when it discovered a potential defect (SAC ¶¶28-30), offered a free repair kit (SAC ¶ 30), the recall to repair was approved by the CPSC (SAC ¶¶30, 31); and that anyone with a stroller subject to the recall was offered to participate (SAC ¶30). By doing so, Baby Generation "set into motion the great grinding gears of a statutorily mandated and administratively overseen national recall process." *Winzler*, 681 F.3d at 1211. Plaintiffs no longer have an "actual injury" to be remedied by either damages or equitable relief, their claims are moot and should be dismissed. *Flores v. FCA US LLC*, No. 19-10417, 2020 WL 7024850, at *4 (E.D. Mich. Nov. 30, 2020) (recall results in plaintiffs having "no claim for actual damages"); see also *Sharp*, *id*. at 465-466 (explaining that prudential mootness applies even where plaintiffs seek monetary damages).[12]

---

[12] That is true whether or not a Plaintiff participates in the recall. A plaintiff cannot manufacture standing by refusing to participate in the recall to repair. *See, e.g., Sugasawara v. Ford Motor Co.*, 2019 WL 3945105, at *6 (N.D. Cal. Aug. 21, 2019) (rejecting attempt to "manufacture standing" by declining to participate in a recall and finding that any remaining injury is due to that refusal and thus "not fairly 'traceable'" to the defendant's conduct).

## POINT II
## PLAINTIFFS FAIL TO STATE ANY VALID CLAIMS FOR RELIEF AGAINST BABY GENERATION

Even if one or more of the Plaintiffs had standing to assert claims against Baby Generation that were not mooted by the recall, the SAC should still be dismissed. None of the Plaintiffs has alleged legally valid claims against Baby Generation upon which relief may be granted.

As a threshold matter, it is important which allegations are properly considered in determining whether any of the Plaintiffs have stated a valid claim for relief. As demonstrated above, the 223-paragraph SAC contains very few allegations about each of the individual Plaintiffs. Instead, many of the SAC's supposed "factual" allegations consist of unverified postings, complaints and summaries of such things that Plaintiffs pulled from the internet.[13] These

---

[13] *See, e.g.*, SAC at:

¶4 ("This very dangerous defect … has been experienced and reported by disappointed consumers firsthand after the point of sale");

¶5 ("While some consumers can no longer use their Strollers because of the defect, others, whose Strollers do not show damage at this time, now fear for their children's safety because the defect can manifest at any time while in regular use, and some have resorted to purchasing substitute strollers");

¶26 "Consumer Reports states that: 'Posts on social media and reports submitted to the CPSC describe how some customers had their strollers break without warning while carrying two children, sometimes in the middle of busy city streets. Some parents shared stories about the stroller breaking so suddenly while in motion that their small children, still strapped in their stroller seats, were thrown to the ground'");

¶30 ("many consumers were never directly notified by the Defendant about the recall due to Baby Generation's ineffective notice efforts and because many consumers received the Strollers as gifts");

¶33 ("there are already reports of reinforcement kits breaking on social media: 'Mockingbird snapped even with the enforcement kit that was sent as a fix for their recall. Be careful mamas!'");

¶35 ("As reportedly detailed by one consumer of the Strollers: '[i]t's disappointing that Mockingbird isn't offering its customers a refund as a part of this recall…[a] repair is fine for parents who want to keep their stroller, but if there's a parent who is uncomfortable using the product for their child, they should be able to get their money back'");

¶36 ("Another consumer claims on social media that they never would have bought the Stroller if they knew it was this cheaply made");

¶37 ("A consumer who allegedly had three frames break in a row before she finally gave up on the Strollers, reportedly stated that 'the reinforcement kit is ridiculous[.] As a parent, I want a product that is strong enough to start, not one I have to add extra material to make safe. It's putting a Band-Aid on a broken bone'");

¶38 ("Parents reportedly described their experiences as terrifying close calls as evidenced by these photos showing the defect");

¶39 ("In fact, one consumer allegedly experienced the defect after Defendant had already replaced her Single-to-Double Stroller, stating in a complaint on the CPSC website on September 14, 2022 (and sent to Defendant by the CPSC on September 19, 2022), that when out walking the '[S]troller snapped in half and they both fell to the ground'");

allegations – none of which has any relationship to any of the Plaintiffs – are improper and should be disregarded for two fundamental reasons.

First, it is wholly improper, and insufficient to state a claim, for a plaintiff to cite to and rely upon unverified allegations made by others. *Miller v. Schweickart*, 413 F. Supp. 1059, 1061 (S.D.N.Y. 1976) ("[u]nverified hearsay based on rumor is not sufficient upon which to subject one to the burdens of complex litigation and heavy legal costs)." "Rule 11 'explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed.'" *Dimitri Enterprises, Inc. v. Spar Insurance Agency LLC*, 2022 WL 5237811, *2 (2d Cir. 2022) citing *Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998). *See also Geinko v. Padda*, 2002 WL 276236, at *6 (N.D. Ill. Feb. 27, 2002) (Rule 11 conveys a non-delegable duty upon the signing attorney to conduct his own independent analysis of the facts and law which form the basis of a pleading or motion). Cruising websites and internet chatrooms does not satisfy this obligation. *In re UBS AG Securities Litigation*, 2012 WL 4471265, footnote 17 (S.D.N.Y. Sept. 28, 2012) (the Court need not consider uncorroborated allegations for which counsel has not conducted independent investigation).

Second, anonymous non-party statements are hearsay. Plaintiffs' web-culled allegations must be disregarded for this reason as well. *Wiseberg v. Toyota Motor Corp.*, 2012 WL 1108542,

---

¶40 ("parents describe two types of breaks happening most frequently');

¶41 ("The frame reinforcement kits have also since been proven to be ineffective. On social media customers describe the uselessness of these reinforcement kits");

¶44 ("Prior to and following the recall there were a series of negative reviews about the Strollers. Prior to the recall, one review reportedly states that Consumer Reports' safety experts requested Defendant recall the Strollers 'following dozens of reports from parents that their strollers had broken in dangerous ways. In numerous instances, sudden breaks caused small children to fall face down on the pavement at busy intersections'");

¶45 ("Internet posts detail parents' terrifying experiences with these breaks");

¶46 ("Many customers expressed on social media that they still feared using the new Stroller");

¶47 ("Customer reviews reportedly called Baby Generation's response to these incidents 'shady' since for a while Defendant was replacing the broken strollers with the same strollers and telling customers to check their frames if they're cracked instead of recalling the stroller").

at *13 (D.N.J. Mar. 30, 2012) (striking anonymous internet complaints from complaint); *SSDD Enter., Inc. v. Village of Lansing*, 1996 WL 238931, at *2 n.7 (N.D. Ill. May 3, 1996).

This is entirely consistent with well-established Supreme Court precedent that makes clear a plaintiff in a class action cannot piggyback on the claims of absent class members to create standing where none otherwise exists. *Warth v. Seldin*, 422 U.S. 490, 502 (1975) ("Petitioners must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class."); *Lewis v. Casey*, 518 U.S. 343, 358 (1996) (district court could only consider injury suffered personally by named plaintiff). The Plaintiffs' allegations relying upon reviews posted on the internet by unascertainable third parties, even if assumed true, cannot create standing or a justiciable case or controversy. *Id.*

Separately, Plaintiffs falsely claim they have been damaged by a significantly diminished resale market for used Strollers because "the U.S. Consumer Product Safety Commission advises consumers that reselling a recalled product is a violation of federal law, specifically Section 19 of the Consumer Product Safety Act (15 U.S.C. § 2068)" (SAC ¶34).

The Consumer Product Safety Act *does not ban* the resale by Plaintiffs of Baby Generation's Strollers. Recalled products that have been repaired in accordance with a recall are not subject to the Consumer Product Safety Act's resale prohibition. CPSC's Resellers Guide to Selling Safer Products (May 2021) states at page 5 "Examples: What you cannot sell or offer for sale: … Products that have been recalled by the CPSC (*unless the products have been repaired in accordance with the recall*)" (emphasis added).[14]

---

[14] Defendant respectfully requests that the Court take judicial notice of The Resellers Guide to Selling Safer Products. A copy is attached to the Richardson Declaration as Exhibit 4 and is available on the CPSC's website at https://www.cpsc.gov/s3fs-public/Resellers-Guide-Updated-Final-3-3--21.pdf

After disregarding the unverified hearsay allegations and misstatements, what remains of the SAC's allegations actually related to any of the Plaintiffs fail to support any of the causes of action asserted in the SAC.

### A. Counts 1 and 2 Fail to State Claims for Deceptive Act or Practices and False Advertising Under Sections 349 and 350 of New York's General Business Law

In Counts 1 and 2, Plaintiffs purport to assert claims for deceptive practice and false advertising under Sections 349 and 350 of the New York General Business Law (SAC ¶¶ 105-123). To state a claim for deceptive practices under Section 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *PharmacyChecker.com v. Nat'l Ass'n of Boards of Pharmacy*, 629 F. Supp. 3d 116, 132 (S.D.N.Y. 2022). Similarly, to state a claim for false advertising under Section 350, a plaintiff must allege "(1) that the act, practice or advertisement was consumer-oriented; (2) that the act, practice or advertisement was misleading in a material respect, and (3) that the plaintiff was injured as a result of the deceptive practice, act or advertisement." *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 525 (S.D.N.Y. 2003). Both claims sound in fraud and are therefore subject to the heightened pleading requirements of Rule 9(b).

As a threshold matter, although all Plaintiffs purport to assert claims in Counts 1 and 2, Sections 349 and 350 are expressly confined to alleged conduct in the state of New York. *See* N.Y. Gen. Bus. Law § 349 (prohibiting "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service *in this state*"); N.Y. Gen. Bus. Law § 350 (prohibiting "false advertising in the conduct of any business, trade or commerce or in the furnishing of any service *in this state*") (emphasis added). Only Dajlani alleges that she is a citizen of New York. No other Plaintiff alleges that she is a citizen or resident of New York or that she

purchased any stroller in New York or has any claim under Sections 349 or 350. Counts 1 and 2 should be dismissed to the extent they purport to assert claims on behalf of Egan, Barrales, Lizarraras, Perella, McFarland, Tricozzi and Maher.

Counts 1 and 2 also fail to state claims under Sections 349 and 350 on behalf of Dajlani. For one, although alleging that she is a citizen of New York, Dajlani does not actually allege that she purchased her stroller in the state of New York. But even putting that aside, Dajlani fails to state valid claims under Sections 349 and 350 for the simple reason that she alleges no facts to establish causation: *i.e.*, that she was injured by any alleged deceptive practice or false advertising by Baby Generation. Dajlani does not allege that she ever saw any of the alleged false or misleading statements or advertising identified in the SAC, let alone that she purchased her stroller as a result of those statements or advertising. Indeed, Dajlani does not even allege that her stroller suffers from the defect that was the subject of Baby Generation's recall. Because Dajlani fails to state claims for deceptive practices and false advertising against Baby Generation, Counts 1 and 2 should be dismissed.

## B. Count 3 Fails to State a Claim for Unlawful, Unfair and Fraudulent Business Practices Under Section 17200 of the California Business and Professions Code

In Count 3, Barrales, Lizarraras and Perella purport to assert a claim for unlawful, unfair and fraudulent business practices under Section 17200 of the California Business and Professions Code (SAC ¶¶ 118-123). To state a claim under Section 17200, a plaintiff must allege that the defendant engaged in a business practice or conduct that actually violates the law, *California v. McKale*, 25 Cal. 3d 626, 632 (1979), is unfair in that: (i) there exists substantial consumer injury; (ii) the injury is not outweighed by countervailing benefits to consumers or competition; and (iii) the injury was not reasonably avoidable by the consumer, *Camacho v. Auto. Club of So. Cal.*, 142 Cal. App. 4th 1394, 1403 (2006), or was fraudulent. In addition, to state a claim for any of these

practices, a plaintiff must allege that the unlawful, unfair or fraudulent practice caused the plaintiff to suffer an injury. *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 854-55 (2008) ("the phrase 'as a result of' in [Section 17200, et seq.] imposes a causation requirement; that is, the alleged unfair competition must have caused the plaintiff to lose money or property"). Claims for unlawful, unfair and fraudulent practices sound in fraud and are subject to the heightened pleading requirements of Rule 9(b). *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003); see also *Meinhold v. Sprint Spectrum*, 2007 WL 1456141, at *6 (E.D. Cal. 2007) (California consumer protection claims that manufacturer knowingly made false statements concerning products were subject to Rule 9(b)).

Count 3 fails to state a valid claim on behalf of Barrales, Lizarraras and Perella for myriad reasons. For one, Barrales, Lizarraga's and Perella do not allege the specifics of any unlawful, unfair or fraudulent conduct by Baby Generation *relating to them* at all, much less with the particularity required by Rule 9(b). But more importantly, neither Barrales, Lizarraras nor Perella alleges that she suffered an injury – loss of money or property – as a result of any supposed unlawful, unfair or fraudulent conduct by Baby Generation. Perella does not allege that she purchased a stroller at all, and therefore did not suffer any injury as a result of any alleged conduct by Baby Generation. And while Barrales and Lizarraras allege that they purchased strollers, neither alleges that her stroller suffers from the defect that was the subject of the recall (the same is true for Perella).[15] Because Barrales, Lizarraras nor Perella have not alleged that they suffered any injury as a result of any unlawful, unfair or fraudulent conduct by Baby Generation, Count 3 fails to state a claim and should be dismissed.

---

[15] Indeed, Barrales and Lizarraras do not allege that their strollers came from one of the lots subject to recall.

### C. Count 4 Fails to State a Claim Under the California Legal Remedies Act

In Count 4, Barrales, Lizarraras and Perella purport to assert a claim under the California Legal Remedies Act (SAC ¶¶ 124-129). Count 4 fails for two fundamental reasons. First, Count 4 fails for the same reasons Count 3 fails. Although the Act "declares unlawful a variety of 'unfair methods of competition and unfair or deceptive acts or practices' used in the sale or lease of goods or services to a consumer," *Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545, 1556, 127 Cal. Rptr. 3d 569, 578 (2011), Barrales, Lizarraras and Perella do not allege the specifics of any such conduct relating to them. Nor do they allege an injury to them as result of any purported acts or practices. *Id*. ([r]elief under the CLRA is specifically limited to those who suffer damage, making causation a necessary element of proof . . . plaintiffs in a CLRA action [must] show not only that a defendant's conduct was deceptive but that the deception caused them harm"). Count 4 should be dismissed for this reason alone.

Second, Count 4 fails because Barrales, Lizarraras and Perella are barred from asserting their claim by Sections 1782(b) and (c) of the Act. Those Sections provide:

> (b) Except as provided in subdivision (c), no action for damages may be maintained under Section 1780 if an appropriate correction, repair, replacement, or other remedy is given, or agreed to be given within a reasonable time, to the consumer within 30 days after receipt of the notice.

> (c) No action for damages may be maintained under Section 1781 upon a showing by a person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 that all of the following exist:

> (1) All consumers similarly situated have been identified, or a reasonable effort to identify such other consumers has been made.

> (2) All consumers so identified have been notified that upon their request the person shall make the appropriate correction, repair, replacement, or other remedy of the goods and services.

(3) The correction, repair, replacement, or other remedy requested by the consumers has been, or, in a reasonable time, shall be, given.

(4) The person has ceased from engaging, or if immediate cessation is impossible or unreasonably expensive under the circumstances, the person will, within a reasonable time, cease to engage, in the methods, act, or practices.

As the SAC alleges and admits, Baby Generation has taken the steps required.[16] Count 4 should be dismissed for this reason as well.

### D. Count 5 Fails to State a Claim for False Advertising Under Section 17500 of the California Business & Professions Code

In Count 5, Barrales, Lizarraras and Perella purport to assert a claim for false advertising under Section 17500 of the California Business and Professions Code (SAC ¶¶ 130-135). To state a claim for false advertising a plaintiff must allege, among other things, "that she 'actual[ly] reli[ed]' on the 'allegedly deceptive or misleading statements' and that it 'was an immediate cause' of her injury." *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1137, 258 Cal. Rptr. 3d 270, 278 (2020) (citing *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 326, 246 P.3d 877, 888 (2011)). Count 5 fails for the simple reason that neither Barrales, Lizarraras nor Perella alleges that she saw any allegedly deceptive or misleading advertisements by Baby Generation (or allege the content of any such advertisements as required by Rule 9(b)), let alone that they "actually relied" any advertisements. In addition, neither Barrales, Lizarraras nor Perella alleges that she purchased a stroller that suffers from the defect that was the subject of the recall (Perella did not purchase a stroller at all), and therefore does not allege any actual injury. Count 5 should be dismissed.

---

[16] The SAC references in paragraph 63 Plaintiffs' counsel's August 16, 2023, pre-suit notice letter to Baby Generation's counsel, and attaches a copy as Exhibit A. But the SAC does not attach a copy of Baby Generation's counsel's September 1, 2023, response. Defendant includes a copy with the Richardson Declaration as Exhibit 5.

### E. Count 6 Fails to State a Claim Under the Song-Beverly Warranty Act

In Count 6, Barrales, Lizarraras and Perella purport to assert a claim under the Song-Beverly Warranty Act, which creates a private right of action for breaches of the implied and express warranties of merchantability (Cal. Civ. Code § 1791.1 and 1791.2). This claim, too, fails for two fundamental reasons. First, the Act is limited to "consumer goods that are sold at retail in [California]" (see Cal. Civ. Code § 1792). To state a claim under the Act, a plaintiff must allege that she is the "buyer" of the warranted product from a qualified "retailer" as defined in the statute. *Dagher v. Ford Motor Co.*, 238 Cal. App. 4th 905, 917, 190 Cal. Rptr. 3d 261, 268 (2015). Perella does not allege that she purchased a warranted stroller at all, and, neither Barrales nor Lizarraras alleges the location of the store where each purchased her stroller (assuming, for Lizarraras, that an "upgrade" is indeed a stroller and not some other equipment). Absent these allegations, Count 6 fails, see *Morgan v. Harmonix Music Sys., Inc.*, 2009 WL 2031765, at *2 (dismissing SBA claim because plaintiffs failed to identify where they purchased the goods).

Count 6 also fails because neither Barrales, Lizarraras nor Perella have alleged the breach of any purported express or implied warranty. None of these plaintiffs alleges that her stroller suffers from the defect that was the subject matter of the recall. No defect, no breach of warranty. Count 6 should be dismissed.

### F. Count 7 Fails to State a Claim for Violation of the Massachusetts Consumer Protection Act

In Count 7, Egan purports to assert a claim for violation of the Massachusetts Consumer Protect Act, M.G.L.A Chapter 93A (SAC ¶¶ 142-152). To state a claim under Chapter 93A, a plaintiff must allege "(1) a deceptive act or practice on the part of the seller; (2) an injury or loss suffered by the consumer; and (3) a causal connection between the seller's deceptive act or practice and the consumer's injury." *Patenaude v. Orgain, LLC*, 594 F. Supp. 3d 108, 112 (D. Mass. 2022),

appeal dismissed, No. 22-1255, 2022 WL 4844337 (1st Cir. July 18, 2022). Simply alleging an unfair or deceptive act directed at the consumer "is insufficient; "the unfair or deceptive act or practice must cause the consumer some kind of separate, identifiable harm arising from the violation itself." *Tyler v. Michaels Stores, Inc.*, 464 Mass. 492, 984 N.E.2d 737, 745 (2013). As another claim sounding in fraud, Egan's Chapter 93A claim is subject to the heightened pleading requirements of Rule 9(b).

Egan fails to state a claim under Chapter 93A because she fails to allege any injury or damage to her caused by any alleged deceptive act or practice by Baby Generation. Egan does not allege that she ever even saw any allegedly false or misleading statements by Baby Generation, or that she purchased a stroller as a result of those statements (assuming the upgrade is an actual purchase). Egan also does not allege that her stroller suffers from the defect that was the subject matter of the recall (or that it even has a relevant lot number), and thus has not alleged any harm or injury to her. Count 7 should be dismissed.

### G. Count 8 Fails to State a Claim for Violation of the Illinois Consumer Fraud and Deceptive Business Act

In Count 8, Tricozzi and Maher purport to assert a claim for violation of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") (SAC ¶¶ 153-155). To state a claim under the ICFA, a plaintiff must allege: (1) that the defendant committed a deceptive or unfair act; (2) with the intent that others rely on the deception; (3) that the act occurred in the course of trade or commerce; and (4) actual damages; (5) proximately caused by the deception. *See Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (quoting *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019)).

Count 8 fails to state a claim for numerous reasons. First, Tricozzi fails to allege that the ICFA even applies. The Act applies only to consumer transactions that take place in Illinois. *Avery*

*v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 852 (2005). Tricozzi alleges that she "at all times material hereto, was a citizen of Illinois and/or Michigan." Tricozzi alleges she purchased a stroller in April 2021, but does not allege where she resided at the time or where that purchase was made.[17] At the same time Tricozzi purports to assert her ICFA claim, she also purports to assert a claim under Michigan's Consumer Protection Act based on the same purchase (which fails for the same "failure to allege where her purchase was made" reason). Tricozzi's ICFA claim fails.

Moreover, both Tricozzi's and Maher's claim fails because neither has alleged that she suffered actual damages proximately caused by Baby Generation's alleged conduct. Neither Tricozzi nor Maher alleges that she ever saw any allegedly false or misleading statements by Baby Generation, much less that those statements proximately caused them to suffer any damages – neither alleges that the stroller she purchased suffered from the defect that was the subject of the recall. Count 8 should be dismissed.

### H. Count 9 Fails to State a Claim for Violation of the Michigan Consumer Protection Act

In addition to her ICFA claim, Tricozzi purports to assert a claim in Count 9 for violation of Michigan's Consumer Protection Act based on the same alleged purchases (SAC ¶¶ 159-178). However, like the ICFA, Michigan's CPA does not have extraterritorial reach. *Sexton v. Ryder Truck Rental, Inc.*, 413 Mich. 406, 434, 320 N.W.2d 843, 854 (Mich. 1982) (for a statute to have extraterritorial application, there must be clear legislative intent). Tricozzi does not allege that she purchased her stroller in Michigan, and therefore has not stated claim under Michigan's CPA.

Tricozzi's Michigan CPA claim also fails on the merits. The elements of an MCPA claim are the same as the elements of common law fraud. *In re OnStar Cont. Litig.*, 278 F.R.D. 352, 376

---

[17] Tricozzi alleges that her purchases were from Good Buy Gear (SAC ¶ 83).

(E.D. Mich. 2011). To state a claim under the MCPA, a plaintiff must allege: (1) that the defendant made a material misrepresentation that was false; (2) the defendant knowingly made the false representation with the intent that the plaintiff would act upon it; (3) that the plaintiff acted in reliance upon it; and (4) resulting damages. *Id*.; *see also Kussy v. Home Depot U.S.A. Inc*., No. 06-12899, 2006 WL 3447146, at *5 (E.D. Mich. Nov. 28, 2006) (same). As with her purported ICFA claim, Tricozzi's MCPA claims fails because she does not allege any false representations by Baby Generation on which she relied and does not allege any damages she suffered as a result. Tricozzi's MCPA claim in Count 9 should be dismissed.

I. **Count 10 Fails to State a Claim for Violation of the Missouri Merchandising Practices Act**

In Count 10, McFarland purports to assert a claim for violation of the Missouri Merchandising Practices Act. To state a claim under the MMPA, a plaintiff must allege that she "(1) purchased merchandise (2) for personal, family or household purposes, and (3) suffered an ascertainable loss of money or property (4) as a result of an act declared unlawful under § 407.020. § 407.025.1(1)." *Abbott v. Golden Grain Co.,* 677 F. Supp. 3d 940, 947 (E.D. Mo. 2023). In addition, the plaintiff must also allege "(1) that the person acted as a reasonable consumer would in light of all circumstances; (2) that the method, act, or practice declared unlawful by section 407.020 would cause a reasonable person to enter into the transaction that resulted in damages; (3) and that individual damages with sufficiently definitive and objective evidence to allow the loss to be calculated with a reasonable degree of certainty." *Id*.

McFarland fails to state a claim for violation of the MMPA because she fails to allege factual matter to establish virtually any of the above elements for herself, most glaringly that she suffered any ascertainably loss of money or property as a result of any allegedly unlawful conduct by Baby Generation. McFarland does not allege that her stroller suffered from the defect that was

the subject of the recall. Although McFarland alleges that she participated in the recall, installed the reinforcement kit and that her stroller became damaged when she went to use it nearly a year later, she conspicuously does not allege that the damage was the result of the defect at issue in the recall. Count 10 should be dismissed.

## J. Count 11 Fails to State Claim for Fraud

In Count 11, all Plaintiffs purport to assert a claim for common-law fraud. Although the Plaintiffs allege they are citizens of five different states, the essential elements of a fraud claim are similar and require, among other things, a plaintiff to allege a false representation or omission of material fact by the defendant, made with knowledge of its falsity and with an intent to deceive, the plaintiff's reliance on the false statement or omission, and damages caused by that reliance. *See, e.g.*, *Spector v. Wendy*, 63 A.D.3d 820, 821–22, 881 N.Y.S.2d 465, 467 (2009) ("The essential elements of a cause of action sounding in fraud are a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury").[18]

---

[18] *Balles v. Babcock Power Inc.*, 476 Mass. 565, 573, 70 N.E.3d 905, 913 (2017) (elements of fraud consist of "[1] a false representation [2] of a matter of material fact [3] with knowledge of its falsity [4] for the purpose of inducing [action] thereon, and [5] that the plaintiff relied upon the representation as true and acted upon it to his [or her] damage"); *Lim v. The.TV Corp. Internat.*, 99 Cal. App. 4th 684, 694, 121 Cal. Rptr. 2d 333, 339 (2002) (elements of fraud are (1) a representation, (2) that is false, (3) made with knowledge of its falsity, and (4) with an intent to deceive, coupled with (5) actual detrimental reliance and (6) resulting damage); *Dean v. Noble*, 477 S.W.3d 197, 204 (Mo. Ct. App. 2015) ( essential elements of fraud are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury); *Jett v. Zeman Homes, Inc.*, 2018 IL App (1st) 170690-U, ¶ 16 (plaintiff alleging common law fraud must allege "(1) a statement by defendant; (2) of a material nature as opposed to opinion; (3) that was untrue; (4) that was known or believed by the speaker to be untrue or made in culpable ignorance of its truth or falsity; (5) that was relied on by the plaintiff to his detriment; (6) made for the purpose of inducing reliance; and (7) such reliance led to the plaintiff's injury").

Plaintiffs' claim for fraud fails because no Plaintiff has alleged any false statements or material omission that they saw or were ever exposed to, nor do they allege that they relied on any such statements or omissions or suffered any damages as a result. No Plaintiff has stated a valid claim for common-law fraud and Count 11 should be dismissed.

### K.  Count 12 Fails to State Claim for Unjust Enrichment

In Count 12, all Plaintiffs purport to assert a claim for unjust enrichment (SAC ¶¶ 194-199). To state a claim for unjust enrichment:

- Dajlani must allege: "(1) the other party was enriched, (2) at that party's expense and (3) that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered." *Hochheiser v. Alin*, 59 Misc. 3d 1207(A), 100 N.Y.S.3d 609 (N.Y. Sup. Ct. 2018).

- Egan must allege: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention of the benefit by the defendant under circumstances which make such acceptance or retention inequitable. *Sweeney v. DeLuca*, No. 042338, 2006 WL 936688, at *8 (Mass. Super. Mar. 16, 2006).

- McFarland must allege: "(1) that the defendant was enriched by the receipt of a benefit; (2) that that enrichment was at the expense of the plaintiff; [and] (3) that it would be unjust to allow the defendant to retain the benefit." *Beeler v. Martin*, 306 S.W.3d 108, 112 (Mo. Ct. App. 2010).

- Maher, and possibly Tricozzi (if she figures out where she lived at the time) must allege: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law." *Sherman v. Ryan*, 392 Ill. App. 3d 712, 734, 911 N.E.2d 378, 399 (2009). Alternatively, Tricozzi must allege: "(1) receipt of a benefit by the defendant from plaintiff, and (2) an inequity resulting to plaintiff from defendant's retention of the benefit." *Custom Pack Sols., Inc. v. Great Lakes Healthcare Purchasing Network, Inc.,* No. 334815, 2018 WL 1020671, at *4 (Mich. Ct. App. Feb. 22, 2018).

- Barrales, Lizarraras and Perella must allege: the "receipt of a benefit and [the] unjust retention of the benefit at the expense of another." *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593, 80 Cal. Rptr. 3d 316, 323 (2008).

None of the Plaintiffs comes close to alleging facts supporting a claim for unjust enrichment. Again, Perella does not allege that she purchased a stroller at all, and her bald

contention that Baby Generation "has been unjustly enriched in retaining the revenues derived from" her purchase of a stroller is baseless (SAC ¶ 198). The same is true for each of the other plaintiffs. Barrales and McFarland purchased their strollers from Target (SAC ¶¶ 58, 78) and Maher purchased her stroller from Good Buy Gear (SAC ¶ 83). These purchases are far too attenuated from Baby Generation to support a claim for unjust enrichment.

But more importantly, no Plaintiff alleges that the stroller she has, purchased, was gifted, etc., suffers from the defect that was the subject matter of the recall. Even assuming that purchasing an upgrade is the purchase of a stroller, Baby Generation has not been "unjustly enriched" by the purchase of any stroller by any of the Plaintiffs. Count 12 fails to state a claim for unjust enrichment by any Plaintiff and should be dismissed.[19]

## L. Counts 13 and 14 Fail to State Claims for Breach of Implied and Express Warranty

In Count 13, all Plaintiffs purport to allege a claim for breach of the implied warranty of merchantability (SAC ¶¶ 200-210), and in Count 14 Plaintiffs all purport to assert a claim for breach of express warranty (SAC ¶¶ 211-216). These claims fail and should be dismissed.

To state a claim for breach of the implied warranty of merchantability:

- Dajlani must allege: "allege that goods are defective such that they were not reasonably fit for the ordinary purpose for which they were used, that the defect in the goods was a substantial factor in causing the injury, and that the alleged defect existed at the time the goods left the manufacturer or entity in the line of distribution." *Fiuzzi v. Paragon Sporting Goods Co. LLC*, 212 A.D.3d 431, 433, 181 N.Y.S.3d 544, 547 (2023).

---

[19] Plaintiffs' unjust enrichment claim also fails because it is merely duplicative of Plaintiffs' other claims. "[W]here an unjust enrichment claim is duplicative of other causes of action, it should be dismissed." *Bourbia v. S.C. Johnson & Son, Inc.*, 375 F. Supp. 3d 454, 467 (S.D.N.Y. 2019). An unjust enrichment claim is duplicative if it "relies on the same conduct that forms the basis of [the plaintiff's] other claims." *Id.*; *see, e.g.*, *Patellos v. Hello Prods., LLC*, 523 F. Supp. 3d 523, 536-38 (S.D.N.Y. 2021) (dismissing unjust enrichment claim because it "essentially replicates" the plaintiffs' other claims); *Campbell v. Whole Foods Mkt. Grp.*, 516 F. Supp. 3d 370, 393 (S.D.N.Y. 2021) (unjust enrichment claim "will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action").

- Egan must allege: "that 1) defendant manufactured or sold the subject product, 2) that product contained a defect or unreasonably dangerous condition rendering it unsuitable for its ordinary use, 3) plaintiff was using the product in a manner that defendant intended or reasonably could have foreseen and 4) the defect or dangerous condition was a legal cause of plaintiff's injury." *Zoll Med. Corp. v. Barracuda Networks, Inc.*, 565 F. Supp. 3d 101, 107 (D. Mass. 2021).

- McFarland must allege: "(1) that a merchant sold goods, (2) which were not "merchantable" at the time of the sale, (3) injury and damages to the plaintiff or his property (4) which were caused proximately or in fact by the defective nature of the goods, and (5) notice to the seller of the injury." *Ragland Mills, Inc. v. Gen. Motors Corp.*, 763 S.W.2d 357, 360 (Mo. Ct. App. 1989).

- Maher and possibly Tricozzi must allege: "(1) a sale of goods (2) by a merchant of those goods, and (3) the goods were not of merchantable quality." *Brandt v. Bos. Sci. Corp.*, 204 Ill. 2d 640, 645, 792 N.E.2d 296, 299 (2003). Depending on where she lived, Tricozzi must allege: "(1) that the retailer sold the product in a defective condition and (2) the defect caused the plaintiff's injury." *Siedlik v. Stanley Works, Inc.*, 205 F. Supp. 2d 762, 764 (E.D. Mich. 2002).

- Barrales, Lizarraras and Perella must allege: "the goods do not conform to the promises or affirmations contained on the container or label or are not fit for the ordinary purposes for which the goods are used." California-*Martinez v. Metabolife Internat., Inc.*, 113 Cal. App. 4th 181, 189, 6 Cal. Rptr. 3d 494, 500 (2003).

Similarly, to state a claim for breach of express warranty, all Plaintiffs must allege, at minimum, the existence of an express warranty, the terms of which were breached. *See e.g. PNC Bank, Nat. Ass'n v. Wolters Kluwer Fin. Servs., Inc.*, 73 F. Supp. 3d 358, 369 (S.D.N.Y. 2014); Mass. Gen. Laws Ann. ch. 106, § 2-313; *Rugg v. Johnson & Johnson*, No. 17-CV-05010-BLF, 2018 WL 3023493, at *4 (N.D. Cal. June 18, 2018); *Gillan v. Wright Med. Tech. Inc.*, 396 F. Supp. 3d 844, 848–49 (E.D. Mo. 2019); *Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors Am., Inc.*, 372 Ill. App. 3d 354, 360, 865 N.E.2d 334, 340 (2007); *Teal v. Argon Med. Devices, Inc.*, 533 F. Supp. 3d 535, 553 (E.D. Mich. 2021).

No Plaintiff has alleged a valid claim for either breach of the implied warranty of merchantability or an express warranty. For the latter, no Plaintiff alleges the existence of any express warranty at all. And even if they had, no Plaintiff has alleged that the stroller she

purchased, first-hand or second-hand, or was "gifted" in some fashion suffers from the defect that was the subject of the recall. No Plaintiff has therefore alleged a "breach" of any alleged express or implied warranty and Count 14 should be dismissed.

## M. Count 15 Fails to State a Claim for Negligent Misrepresentation

Finally, in Count 15, all Plaintiffs purport to assert a claim for negligent misrepresentation (SAC ¶¶ 217-223). This claim fails for the same reasons Plaintiffs' claim for common-law fraud in Count 11 fails.[20] No Plaintiff has alleged facts establishing that she ever saw any alleged misrepresentations by Baby Generation, much less that she relied on them and suffered an injury as a result. Count 15 fails to state a claim for negligent misrepresentation and should be dismissed.

In addition, the negligent misrepresentation claims of Dajlani, McFarland, Barrales, Lizarraras, Perella, McFarland, Tricozzi and Maher are all barred by the economic loss doctrine. Under that doctrine, which has been adopted in New York, California, Illinois, Michigan, and Missouri, a party cannot recover in tort for purely economic losses. *Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of New York*, 734 F. Supp. 2d 368, 378 (S.D.N.Y. 2010); *JMP Sec. LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1044 (N.D. Cal. 2012) (applying economic loss rule to dismiss negligent misrepresentation claim); *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 89, 435 N.E.2d 443, 452 (1982); *Dannix Painting, LLC v. Sherwin-Williams Co.*, 732 F.3d 902, 910 (8th Cir. 2013) (applying Missouri law); *Rembrandt Const., Inc. v. Butler Mfg. Co.*, No. 270577, 2006 WL 3375249, at *3 (Mich. Ct. App. Nov. 21, 2006). These Plaintiffs' claim in Count 15 should be dismissed for this reason as well.

---

[20] Like fraud, a claim for negligent misrepresentation is subject to the heightened pleading requirements of Rule 9(b). *See, e.g., William Beaumont Hosp. Sys. v. Morgan Stanley & Co.*, 677 Fed. App'x 979, 982–83 (6th Cir. 2017); *Riker v. Premier Cap., LLC*, No. 15-CV-8293, 2016 WL 5334980, at *5 (S.D.N.Y. Sept. 22, 2016); *N. Am. Cath. Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 15 (1st Cir. 2009); *Media Bank, LLC v. SCOTTeVEST, Inc.*, No. 19-CV-2465, 2020 WL 6825691, at *9 (N.D. Ill. Nov. 20, 2020); *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003).

# CONCLUSION

For the reasons stated herein, Baby Generation respectfully submits that Plaintiffs' Second Amended Complaint fails to state a claim against Baby Generation upon which relief may be granted and should be dismissed, with prejudice.[21]

Dated: New York, New York
April 15, 2024

Respectfully submitted,

SMITH, GAMBRELL, & RUSSELL, LLP

*s/ Jeremy D. Richardson*

_____
Jeremy D. Richardson
1301 Avenue of the Americas, 21st Floor
New York, New York 10019
Tel: (212) 907-9700
Fax: (212) 907-9800
jrichardson@sgrlaw.com

Ian J. Dankelman (admitted *pro hac vice*)
201 North Franklin Street, Suite 3550
Tampa, Florida 33602
Tel.: (813) 488-2937
Fax: (813) 488-2960
idankelman@sgrlaw.com

---

[21] At a conference held April 1, 2024, before the Honorable Magistrate Judge Cho, Plaintiffs advised the Court that they did not wish to seek leave to further amend their pleading, stating that they would stand on the SAC. See Minute Entry for Pre-motion Conference proceedings held on 4/1/2024 before Magistrate Judge James R. Cho.